UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR MARTE,

Petitioner,

-against-

WALLKILL CORRECTIONAL FACILITY, SUPERINTENDENT,

Respondent.

25-CV-6771 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Pro se Petitioner Victor Marte brings the present Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Petitioner challenges his state court conviction of criminal possession of a controlled substance in the second degree, criminal possession of a weapon in the third degree, and criminal use of drug paraphernalia in the second degree. He maintains that his apartment was illegally searched when his landlord, acting as an agent for the government, entered it without a warrant. He also contends that his rights were violated when the trial court refused to adjourn his sentencing in light of a recent Supreme Court decision that he argues impacted his case. Because the search of Petitioner's apartment did not constitute government action and because the state court's denial of Petitioner's request for adjournment did not unduly prejudice Petitioner, the Court denies the Petition.

## BACKGROUND

### I. Facts

Petitioner Victor Marte has had several criminal convictions prior to this action. On March 11, 2005, a court in this District entered a judgment against Petitioner and sentenced him to a 40-month term of imprisonment. Judgment, *United States v. Marte-Estrella*, No. 04-CR-745 (HB) (S.D.N.Y. Mar. 11, 2005), ECF No. 26. Subsequently, on October 28, 2010, a judgment

was entered against Petitioner in a different criminal case in this District. *United States v. Marte-Estrella*, No. 08-CR-410 (RWS) (S.D.N.Y. Oct. 28, 2010), ECF No. 22. Petitioner was sentenced to a 60-month term of imprisonment and four years of supervised release. *Id.* Therefore, in March 2017—when the events underlying Petitioner's current conviction occurred—he was on federal supervised release.

In March 2017, the United States Drug Enforcement Agency ("DEA") "obtained a court order, premised on probable cause, permitting law enforcement officers to utilize a cell-site simulator on Petitioner's cellular phone to obtain its location." ECF No. 12 ("Lomma Aff.") at 3; *see also* ECF No. 13-13 at 1 ("[W]ith an order predicated on probable cause from a Justice of the New York County Supreme Court, Special Narcotics Court, the DEA was permitted to electronically geolocate a cell phone, using a process colloquially known as 'pinging'"). The order was premised on information received indicating "that Petitioner was planning to conduct a multi-kilogram heroin transaction." Lomma Aff. at 3. Pursuant to that order, on March 28, 2017, the DEA used a cell-site simulator to locate Petitioner's phone at a Home Depot in New Rochelle, New York. *Id.* Subsequently, DEA Agent Bryan Iandoli went to the Home Depot and followed a black Acura MDX to parking space number 20 at 48 Burling Lane in New Rochelle, New York ("48 Burling"). *Id.* Agent Iandoli knew that Petitioner possessed an Acura MDX, because Petitioner had previously been arrested while using that vehicle to transport fentanyl. *Id.*

The next day, on March 29, 2017, DEA agent Richard Appawu went to 48 Burling and spoke with the building's owner, Anthony Hammel. *Id.* Hammel explained that parking space number 20 was designated for apartment 315 of 48 Burling and that a male individual had been staying with the female lessee of apartment 315. *Id.* at 3–4. Hammel then identified a photograph of Petitioner as the man who was staying in apartment 315. *Id.* at 4. Hammel also informed

Agent Appawu that the female lessee of apartment 315 had referred a prospective renter, who subsequently rented apartment 301 at a neighboring building, 32 Burling Lane ("32 Burling"). *Id.* Additionally, the office for 48 Burling was located at 32 Burling. *Id.*

On the following day, March 30, 2017, DEA agents went to 32 Burling and, with Hammel's consent, watched surveillance video of the parking lot at 48 Burling. *Id.* Agent Iandoli viewed video surveillance from March 28, 2017, which depicted two people unloading a 30-gallon garbage pail from the Acura MDX into 48 Burling. *Id.* "Based on his training and experience," Agent Iandoli believed that the pail was narcotic paraphernalia, which possibly contained hazardous chemicals. *Id.* Agent Iandoli shared his belief with Hammel, who expressed concern for the apartment building and its tenants, who included his mother. *Id.*

Hammel raised the idea of using his set of keys to enter apartment 315, and then did so with his brother Michael, who took photographs of the apartment. *Id.* Agent Iandoli did not accompany the Hammel brothers or enter the apartment building. *Id.* Inside the apartment, the Hammel brothers observed what appeared to be a deep fryer, an industrial press machine, several rolls of duct tape, a vacuum sealer, and respiratory masks. *Id.* The brothers informed Agent Iandoli of what they had seen. *Id.*

Subsequently, the New Rochelle Police and the DEA obtained a search warrant to search apartment 315. *Id.* at 5. During the search, law enforcement recovered, *inter alia*, Ziploc bags filled with white powder, Tyvek suits, respiratory masks, duct tape, scales, four handguns and magazines, three kilograms of cocaine, two kilograms of heroin, and various chemicals used to process heroin. *Id.* There was no food, utensils, or dishes in the apartment. *Id.* Additionally, the electrical box had been tampered with in order to draw more power into the apartment, which included a 220-volt "makeshift oven" in the bedroom. *Id.*

The next day, on March 31, 2017, police stopped Petitioner and recovered numerous cellular phones, one key and key fob that matched apartment 315, and another key and fob that opened apartment 301 at 32 Burling. *Id.* Petitioner was transported to the New Rochelle Police Department, where DEA agents, including Agent Iandoli, spoke with him. *Id.* Agent Iandoli failed to administer complete *Miranda* warnings, although he did inform Petitioner that he had the right to refuse to speak. *Id.* Petitioner provided the DEA with information about large-scale narcotics trafficking operations. *Id.* at 5–6. New Rochelle Police Officer Guglielmo also interviewed Petitioner. *Id.* at 6. During these interviews, Petitioner implicated himself as involved in narcotics manufacturing trafficking. *See* ECF No. 14 at 35:4–5, 116:4–17. Petitioner consented to searches of apartment 301 and his cellular phones by both the DEA agent and Officer Guglielmo. Lomma Aff. at 6. A search of apartment 301 at 32 Burling yielded an additional eight kilograms of cocaine. *Id.*

**II. Procedural Posture**

On October 2, 2017, Petitioner was charged in the Westchester County Court with criminal possession of a controlled substance in the first degree, among other charges. Lomma Aff. at 6 (citing ECF No. 13-1). On February 15, 2018, the Westchester County Court unsealed redacted versions of the search warrant and affidavit. ECF No. 13-2. These documents revealed that the Government had utilized a cell-site simulator to ping Petitioner's phone at the Home Depot. ECF No. 13-3. The order permitting the government to use the cell-site simulator remained sealed as part of a protective order related to a larger DEA investigation and was not provided to Petitioner or counsel. Lomma Aff. at 7.

Thereafter, Petitioner, through counsel, argued that his March 31, 2017 statements to police and DEA agents were unlawfully obtained, that the apartment 301 search was the fruit of

Petitioner's unlawfully obtained statements, and that the search of apartment 315 at 48 Burling was also unlawful. ECF No. 13-7. In April 2018, the state court held a suppression hearing. *See* ECF No. 14. Officer Guglielmo, Agent Iandoli, Agent Appawu, and Anthony Hammel testified. *Id.* Officer Guglielmo, Agent Iandoli, and Anthony Hammel all testified that following review of surveillance video of 32 Burling, Anthony Hammel raised the idea of searching the apartment out of concern for his property and its tenants, which included his mother. ECF No. 14 at 9:6–10, 10:4–14 (Officer Guglielmo testifying that Agent Iandoli stated that "the brothers made the decision that they wanted to go inside of the building, inside of the apartment, which is 315"); *id.* at 123:3–9 (Agent Iandoli testifying that Anthony Hammel "first raised the idea of the landlords entering" apartment 315); *id.* at 189:20–25; *see also* ECF No. 14-1 at 4:22–5:6, 5:14–20, 7:12–8:17. Hammel testified that following his discussion with the DEA agents, he "immediately got nervous [because of his] tremendous investment." ECF No. 14 at 189:19–20. Hammel stated that he "felt that the building was at risk" and that "the families were in jeopardy, including [his] own family in there," so he "insisted that [he] was going to go into the apartment. At which point [the agents] were very specific in saying that they are not allowed to go in and they said that they can't even advise me whether I should be going in." *Id.* at 189:20–25.

On April 19, 2018, the Westchester County Court suppressed Petitioner's March 31, 2017 statements as unlawfully obtained and the result of a custodial interrogation without proper *Miranda* warnings. Lomma Aff. at 8. Accordingly, the court suppressed Petitioner's statements, the search of his phones via passcodes provided by Petitioner, and his consent to search apartment 301 at 32 Burling. *Id.* However, the court determined that the search warrant for apartment 315 was executed legally and the keys, currency, and cell phones recovered from Petitioner upon arrest were legally seized. *Id.* In reaching this conclusion, the court credited

Anthony Hammel's testimony as credible and found that Hammel "decided to go into the apartment based on language in the lease agreement permitting him access to the apartment in emergency situations." ECF No. 14-1 at 8:6–8. The court further concluded that "[t]here [was] no indication that the DEA or any other law enforcement agency initiated Mr. Hammel's actions and Mr. Hammel was told that the DEA specifically could not go into the apartment and could not stop him from going in." *Id.* at 8:9–13.

On April 23, 2018, jury selection began in Petitioner's criminal trial. Lomma Aff. at 9. On May 1, 2018, the Westchester County Court signed a search warrant authorizing a search of Petitioner's cellular phones. *Id.* Petitioner was immediately informed that the search warrant had been issued, and later, on May 8, 2018, the assigned prosecutor disclosed the warrant to Petitioner and shared the evidence retrieved from Petitioner's phones. *Id.*

Thereafter, on May 14, 2018, Petitioner accepted the Government's plea offer and withdrew his plea of not guilty. *Id.* at 9–10. Petitioner pleaded guilty to: criminal possession of a controlled substance in the second degree, and admitted to possessing more than four ounces of narcotics; criminal possession of a weapon in the third degree, and admitted to possessing a 9mm Glock handgun; and criminally using drug paraphernalia in the second degree, and admitted to possessing scales and balances for the purpose of weighing controlled substances. *Id*. at 12.

Before doing so, the trial court judge confirmed with Petitioner, under oath, that Petitioner was knowingly and voluntarily pleading guilty and that he understood the rights he was giving up by pleading guilty. *See id.* at 10–11. Petitioner told the Court that no one had made any promises or representations to him with respect to the plea. *Id.* at 11. Petitioner also confirmed that he understood the potential punishment he was facing, which included up to ten years of incarceration, as a result of his guilty plea. *Id*. Petitioner also agreed to forfeit $2,081,

which was recovered from him upon arrest. *Id.* Relevant to this case, Petitioner stated that he understood that he was waiving his right to appeal to the Appellate Division, executed a written waiver of the right to appeal, and separately confirmed that he was withdrawing all motions, whether pending or decided, including motions seeking suppression of evidence. *Id.* at 12; *see also* ECF No. 13-9 (Petitioner's May 14, 2018 written waiver of his right to appeal).

At that appearance, Petitioner discussed with the court the search of his phones. Lomma Aff. at 12–13. The court confirmed the suppression of Petitioner's statements and sharing of his phone passcodes. *Id.* But, the court continued, the Government accessed Petitioner's cell phones following the May 1, 2018 search warrant using an extraction technology that bypassed the passwords. *Id.*

Over a month later, but prior to Petitioner' sentencing, on June 22, 2018, the United States Supreme Court issued *Carpenter v. United States*, 585 U.S. 296 (2018). In *Carpenter*, the Court held that the Government accessing seven or more days-worth of cell-site location information constituted a search under the Fourth Amendment. *Id.* at 302, 315–16. The Supreme Court clarified that *Carpenter* did not reach real-time cell-site location information ("CSLI") or "'tower dumps' (a download of information on all the devices that connected to a particular cell site during a particular interval)." *Id.* at 316.

Four days later, on June 26, 2018, Petitioner appeared with counsel for sentencing. Lomma Aff. at 14. In light of *Carpenter*, Petitioner's counsel requested an adjournment of sentencing to determine whether the Government's use of cell-site data was illegal. *Id.* Petitioner did not move to withdraw the guilty plea. *Id.* The state court denied the request for adjournment, stating that there was no indication that *Carpenter* applied retroactively and that if it was later held to be retroactive, Petitioner could raise his *Carpenter* arguments at that time. *Id.* The Court

then sentenced Petitioner to a ten-year term of incarceration, followed by five years of post-release supervision, among other terms. *Id.* at 15.

Over two years later, on July 28, 2020, Petitioner moved under New York Criminal Procedure Law ("C.P.L.") § 440.10 to vacate his judgment of conviction. ECF No. 13-10. Through new counsel, Petitioner challenged the Government's acquisition of his cell phone location data, and argued, *inter alia*, that his prior counsel provided ineffective assistance by failing to request discovery regarding the pinging of Petitioner's cell phone or otherwise raise the issue, as well as by failing to move to withdraw Petitioner's guilty plea at sentencing. *Id.* at 4–6, 25–43. Petitioner also argued that he did not plead guilty knowingly, voluntarily, and intelligently, because he relied on his defense counsel's "erroneous assurance" that despite his guilty plea and appeal waiver, he would still be able to challenge the search of the cell phones on appeal. *Id.* at 6, 40.

On June 16, 2021, the Westchester County Court denied Petitioner's § 440.10 motion. ECF No. 13-13. The court determined that *Carpenter* did not apply to Petitioner's case because *Carpenter* did not extend to the government obtaining "the real time geolocation of [Petitioner's] cell phone using a cell site simulator." *Id.* at 5. Therefore, the County Court concluded, Petitioner's defense counsel did not provide ineffective assistance in failing to move for suppression of evidence, especially in light of the judicial warrant that was issued for use of a cell-site simulator. *Id.* at 5–6. The court also denied Petitioner's claim "that his attorney misadvised him of his ability to later challenge the search of his cell phones on appeal, thus rendering his plea invalid." *Id.* at 6. The court noted that Petitioner showed "no evidence to support the notion that he even had a viable suppression issue," and that Petitioner's statements

during the plea colloquy indicated that he would have pled guilty regardless of his defense counsel's advice on his ability to appeal. *Id.* at 7.

Petitioner sought leave to appeal the Westchester County Court's denial to the Appellate Division, Second Department. ECF No. 13-14. On October 1, 2021, the Appellate Division denied leave to appeal. ECF No. 13-16.

Two years later, on July 11, 2023, Petitioner, through counsel, appealed his conviction yet again. ECF No. 13-17. He argued that the trial court failed to properly advise him of certain rights, which rendered his appeal waiver invalid, and improperly denied his request to adjourn sentencing in light of *Carpenter. Id.* at 30, 42. Petitioner also appealed the landlord's search of apartment 315, arguing that the Hammel brothers acted with an "intent to assist" the DEA and thus searched the apartment as agents of the government. *Id.* at 34–37. On April 17, 2024, the Appellate Division affirmed the judgment of conviction. ECF No. 13-20. Petitioner sought to further appeal his conviction, but on February 7, 2025, the New York Court of Appeals denied leave to appeal. ECF No. 13-23.

On June 17, 2025, Petitioner filed the present Petition for Writ of Habeas Corpus pro se in the Eastern District of New York. ECF No. 1 ("Pet."). On August 15, 2025, the case was transferred to the Southern District of New York. ECF No. 6. On October 22, 2025, the Government filed its opposition to the petition. ECF Nos. 12–13. On April 1, 2026, Petitioner's reply was filed. ECF No. 19.

## LEGAL STANDARD

28 U.S.C. § 2254(a) provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." An application for a writ of habeas corpus must not be granted unless the applicant has first "exhausted the remedies available" in the applicable state courts, "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

In considering habeas corpus petitions, federal courts apply a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal citation and quotation marks omitted). "The petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Additionally, "review under § 2254(d)(1) [of an adjudication on the merits by a state court] is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

## DISCUSSION

Petitioner raises two grounds in his habeas petition. First, he argues that his former landlord's warrantless search of his apartment constituted an unreasonable search and seizure in violation of the Fourth Amendment. Pet. at 6–9. Second, Petitioner argues that the state court erred in refusing to grant an adjournment of his sentencing so that Petitioner could challenge how the government obtained the cell-site location data in light of *Carpenter*. *Id.* at 10. The Court considers each of these grounds in turn, and determines that both arguments fail.

## I. The Hammel Brothers' Search of Petitioner's Apartment Did Not Constitute Government Action and Did Not Violate the Fourth Amendment

Petitioner raises three largely repetitive grounds in his Habeas Petition related to the Hammel brothers' March 30, 2017 search of apartment 315 of 48 Burling. Pet. at 6–9. Petitioner first contends that "the Petitioner's [l]andlord acted as [an] agent of [l]aw [e]nforcement." *Id.* at 6. Second, Petitioner states that "the warrantless search of the Petitioner's residence by the landlord acting as [an] agent of law enforcement violated Petitioner[']s constitutional rights." *Id.* at 7. Third, Petitioner argues that the March 30, 2017 search warrant was invalid, because it was predicated on evidence "unlawfully obtained" by the landlord. *Id.* at 9. The Government concedes that Petitioner exhausted these claims relating to his landlord's search. *See* ECF No. 13 at 1–2. However, Petitioner's arguments fail on their merits, because the Hammel brothers' actions did not constitute government action.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has "consistently construed this protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal quotation marks omitted). The Second Circuit has held "that when a defendant challenges a search conducted by a private party, the burden lies with the defendant to show that the search constituted governmental action implicating the Fourth Amendment—not with the government to show the absence of governmental action." *United States v. Hines*, 140 F.4th 105, 108 (2d Cir. 2025).

> A search conducted by private individuals at the instigation of a government officer or authority may sometimes be attributable to the government for purposes of the Fourth Amendment; but

> private actions are generally attributable to the government only where there is a sufficiently close nexus between the State and the challenged action of the . . . [private] entity so that the action of the latter may be fairly treated as that of the State itself.

*United States v. DiTomasso*, 932 F.3d 58, 67–68 (2d Cir. 2019) (internal quotation marks and citations omitted); *see also Skinner v. Ry. Lab. Execs. Ass'n*, 489 U.S. 602, 614 (1989) ("Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities.") "The close nexus test is not satisfied when the state merely approves of or acquiesces in the initiatives of the private entity." *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (cleaned up). "Instead, a close nexus is generally found '[w]hen the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert.'" *Hines*, 140 F.4th at 112 (quoting *Stein*, 541 F.3d at 147).

Here, the Hammel brothers independently searched apartment 315. Lomma Aff. at 4. No state actors accompanied the Hammel brothers, and there is no indication that a state actor induced, encouraged, or exercised coercive power to effect the search. *Id.* Rather, the Hammels had independent motivations to search the apartment. *Id.* As the state court credited, Anthony Hammel and law enforcement officials testified during the suppression hearing that after reviewing surveillance video of 32 Burling, Anthony Hammel raised the idea of searching the apartment himself—out of concern for his property and its tenants, which included his mother. ECF No. 14 at 9:6–10, 10:4–14, 123:3–9, 189:20–25; *see also* ECF No. 14-1 at 4:22–5:6, 5:14–20, 7:12–8:17.

Hammel testified that following his discussion with the DEA agents, he "immediately got nervous [because of his] tremendous investment." ECF No. 14 at 189:19–20. Hammel stated that

he "felt that the building was at risk" and that "the families were in jeopardy, including [his] own family in there," and so he "insisted that [he] was going to go into the apartment. At which point [the agents] were very specific in saying that they are not allowed to go in and they said that they can't even advise me whether I should be going in." *Id.* at 189:20–25.

The state court credited Hammel's testimony as credible and found that he "decided to go into the apartment based on language in the lease agreement permitting him access to the apartment in emergency situations." ECF No. 14-1 at 5:4–6, 8:6–8. The state court additionally concluded that "[t]here [was] no indication that the DEA or any other law enforcement agency initiated Mr. Hammel's actions and Mr. Hammel was told that the DEA specifically could not go into the apartment and could not stop him from going in." *Id.* at 8:9–13. A court later authorized a search warrant for the search of apartment 315. *Id.* at 9:3–8. The fact that the Hammel brothers were in conversation with law enforcement beforehand is not a sufficiently close nexus to render their search government action.

Petitioner argues that the DEA agents' acknowledgement that they were not permitted to search apartment 315, but that Anthony Hammel could, constituted coercion. ECF No. 19 at 2. He claims DEA agents used "fear tactics" by suggesting that the presence of drugs and chemicals in the apartment could endanger the building and its tenants, which "implanted into the landlord's *psyche*" the motivation to search the apartment. *Id.* at 8 (cleaned up). However, a government agent informing a landlord, in the course of its investigation, that a certain apartment potentially contained drugs or chemicals, does not, on its own, constitute undue coercion by the government.

Similarly, the agents confirming to Hammel that they could not stop his entry into the apartment does not alone rise to the level of "significant encouragement" necessary to create a

close nexus. *Hines*, 140 F.4th at 112. The Second Circuit has generally required much more directed and suggestive government action, sometimes approaching coercion, to constitute "signficant encouragement." For example, in *United States v. Stein*, the Second Circuit affirmed that a private party's conduct constituted state action when the government "intervened in [the private party's] decisionmaking" and "steered [the private party] toward [the government's] preferred . . . policy" by threatening the private party with a criminal indictment as a consequence of non-compliance. 541 F.3d at 148. *See also Skinner*, 489 U.S. at 615 (finding state action where "the Government did more than adopt a passive position toward the underlying private conduct" and "made plain not only its strong preference for [the private conduct], but also its desire to share the fruits of such intrusions").

In contrast, in *Gilman v. Marsh & McLennan Companies, Inc.*, the Second Circuit concluded that a private party's internal investigation did not constitute state action, even though its expansion was "precipitated by allegations advanced by the government," because the private party had independent "institutional reasons" for investigating its employees. 826 F.3d 69, 76–77 (2d Cir. 2016). *See also Darden v. Cnty. of Suffolk*, No. 21-CV-5132 (OEM) (ST), 2024 WL 3849482, at *3 (E.D.N.Y. Aug. 16, 2024) (determining that police officers "conveying to [hospital] staff that they suspected Plaintiff had ingested drugs during the traffic stop and 'request[ing]' that Plaintiff undergo an x-ray" did not constitute significant encouragement).

Here, Anthony Hammel's testimony, which the presiding state court credited, clearly establishes that he and his brother acted independently of the government, out of their own self-interest. Therefore, the Hammels' search did not constitute government action, and the Fourth Amendment does not apply to their actions.

Furthermore, because the Hammel brothers' search did not constitute government action, the subsequent government search, authorized by a search warrant, is not the fruit of an unconstitutional search. In other words, the Hammels' independent search did not taint the state's subsequent warrant and search. Therefore, the Hammel brothers' search of apartment 315 did not violate Petitioner's Fourth Amendment rights, and these grounds for relief fail.

**II. *Carpenter* Is Inapplicable**

Petitioner's final ground in his Habeas Petition is that (1) the Government's March 28, 2017 use of a cell-site simulator "to locate the Petitioner and to track his movements back to his apartment" violated his right to privacy in light of *Carpenter* and (2) that the trial court violated his rights by refusing to adjourn sentencing to consider this argument. Pet. at 10. The Government first contends that Petitioner failed to exhaust this claim. *See* ECF No. 13 at 12–13. However, because this ground fails on the merits, the Court does not address exhaustion. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

"A ruling on a request for an adjournment is 'traditionally within the discretion of the trial judge.'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 235 (E.D.N.Y. 2014) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "Consequently, broad discretion must be granted [to] trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar*, 376 U.S. at 589). Similarly, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar*, 376 U.S. at 589. Rather, "[t]he answer must be found

in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* The Supreme Court and New York state courts analyze denials of requests for a continuance under the abuse of discretion standard. *See, e.g., id.*; *People v. Brown*, 934 N.Y.S.2d 414, 415 (2011) (internal citations omitted) ("Whether to grant an adjournment lies in the sound discretion of the trial court, and the exercise of that discretion in denying or partially granting an adjournment will not be disturbed absent a showing of prejudice.").

Here, the state court's denial of Petitioner's request for adjournment on the basis of the *Carpenter* decision could not have violated Petitioner's constitutional rights, because *Carpenter* is inapplicable to this case. In *Carpenter*, the Supreme Court held that police officers' acquisition of cell-site data that provided a "comprehensive chronicle of the [cell phone] user's past movements" constituted a search under the Fourth Amendment. 585 U.S. at 300, 316. Chief Justice Roberts explicitly noted that the Court was not "express[ing] a view on matters not before" it, including "real-time CSLI."[1] *Id.* at 316. The Supreme Court emphasized that *Carpenter* was "not about 'using a phone' or a person's movement at a particular time," but

---

[1] The Supreme Court recently clarified, in *Chatrie v. United States*, No. 25-112, 2026 WL 1855568, at *5, *7 (U.S. June 29, 2026), that individuals have a legitimate expectation of privacy in their cell phone's "Location History"—(data collected and stored by Google apps that make up "a time-stamped record of every place a cell phone has been"—and thus "the police conducted a [Fourth Amendment-protected] search when they gained access to Location History data."

However, *Chatrie* does not affect the case at hand for two reasons. First, *Chatrie* does not apply to the present facts because here, law enforcement utilized a cell-site simulator, rather than obtaining third-party Location History. Lomma Aff. at 3. Additionally, law enforcement obtained a court order, supported by probable cause, permitting use of the cell-site simulator. *Id.* Therefore, the Fourth Amendment is not violated by the search here.

Second, Petitioner's ground for relief is that Petitioner should have been granted an adjournment, in light of *Carpenter's* issuance, prior to his sentencing. Pet. at 10. *Chatrie*, having been issued eight years after Petitioner's sentencing, provides no such relief.

rather "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Id.* at 315.

In this case, the Government used a cell-site simulator (or real-time CSLI) to locate the Petitioner's cell phone at a Home Depot in New Rochelle, New York. *See* ECF No. 19 at 12; Lomma Aff. at 3. Despite the wording of the Petition, which insinuates that the Government used the cell-site simulator to track Petitioner's movements in his vehicle, Pet. at 10, the Government only used the cell-site simulator once, Lomma Aff. at 3. As such, the Court agrees with the state court's determination that *Carpenter* clearly does not apply to cases like this one, in which a cell-site simulator was used to locate a person in real time. *See* ECF No. 13-20; *People v. Marte*, 226 A.D.3d 926, 927 (2d Dep't 2024).

Furthermore, *Carpenter* is inapplicable because, in this case, the DEA "obtained a court order, premised on probable cause, permitting law enforcement officers to utilize a cell-site simulator on Petitioner's cellular phone to obtain its location." Lomma Aff. at 3. Petitioner does not presently challenge the legality of this court order or the sufficiency of the underlying probable cause. *See* Pet. Therefore, even if *Carpenter*'s holding did extend to the use of the cell-site simulator in this case, its requirement of a warrant was satisfied here, and no Fourth Amendment violations are implicated by the search. *See Carpenter*, 585 U.S. at 316 ("Having found that the acquisition of Carpenter's CSLI was a search, we also conclude that the Government must generally obtain a warrant supported by probable cause before acquiring such records.").

In conclusion, because *Carpenter* does not apply, Petitioner does not "establish that the denial of [his] request for an adjournment somehow impaired his defense of the case," as is necessary "to obtain habeas relief based on his adjournment claim." *Brown v. Griffin*, No. 13-

CV-1352 (AKH) (FM), 2016 WL 4382668, at *9 (S.D.N.Y. May 12, 2016), *report and recommendation adopted*, 2016 WL 4382708 (S.D.N.Y. Aug. 16, 2016) (denying on the merits a Petitioner's claim regarding denial of his adjournment request). Additionally, Petitioner's arguments regarding ineffective counsel due to failure to move to suppress the cell-site evidence or withdraw Petitioner's guilty plea also necessarily fail. *See* ECF No. 19 at 14–18; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that in order to make an ineffective assistance of counsel claim, the petitioner must establish that he suffered prejudice as a result of the counsel's deficiency).

All of Petitioner's grounds for habeas relief fail. The Court denies the Petition in its entirety.

**CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED. The Clerk of Court is directed to CLOSE this case.

The Clerk of Court is directed to mail a copy of this Order and Opinion to Petitioner.

Dated: July 15, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge